IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

BANK OF COMMERCE,                    )
                                     )
            Plaintiff,               )
                                     )
vs.                                  )        Case No. CIV-23-204-D
                                     )
STATE AUTOMOBILE MUTUAL              )
INSURANCE COMPANY, *et al.*,         )
                                     )
            Defendants.              )

## O R D E R

Before the Court are Motions to Dismiss of Defendants State Automobile Mutual

Insurance Company ("Mutual") and State Auto Financial Corporation ("Financial") [Doc.

No. 30] and Defendant State Auto Insurance Companies ("State Auto") [Doc. No. 32]

under Fed. R. Civ. P. 12(b)(6).   Plaintiff has filed a combined Objection [Doc. No. 35] to

both Motions, and the movants have filed a joint Reply [Doc. No. 36].

### Factual and Procedural Background

Plaintiff brought this action in state court claiming breach of contract and breach of

an insurer's duty of good faith and fair dealing based on the denial of an insurance claim

for damage to commercial property in Lawton, Oklahoma.   The insurance policy was

issued by Defendant State Auto Property and Casualty Insurance Company ("P&C") to

Red Oak Enterprises ("Red Oak"), and Plaintiff was a named insured as the mortgagee of

the property.   The original defendants – Mutual, Financial, and P&C – timely removed

the case to federal court based on diversity of citizenship.   They alleged Plaintiff is a

citizen of Oklahoma and the removing defendants are citizens of Iowa and Ohio.

Plaintiff moved for remand on the ground that Mutual was organized as a mutual insurance company with stakeholders who are Oklahoma citizens.    The Court rejected the premise of Plaintiff's motion because Plaintiff agreed that Mutual was an Ohio stock corporation with citizenship in Ohio at the relevant times, which are the dates of filing and removal of the case.   *See* 6/1/23 Order [Doc. No. 25] at 5-6.    Then, on a Rule 12(b)(6) motion filed by Mutual and Financial, the Court found that Plaintiff's pleading failed to state a claim for relief against these defendants and dismissed Plaintiff's claims against them with leave to amend.   *See* 6/20/23 Order [Doc. No. 26].    The readers' familiarity with the prior Rule 12(b)(6) Order is assumed; Plaintiff's original allegations and the standard of decision will not be repeated.

Plaintiff is now proceeding under the Amended Complaint [Doc. No. 27], which reasserts the same claims against the dismissed defendants and joins State Auto as an additional defendant.    Plaintiff has added allegations to its original pleading that are intended to cure the defects previously found by the Court as to Mutual and Financial and to hold State Auto jointly liable on the contract and tort claims.    Briefly stated, Plaintiff alleges that the original defendants – Mutual, Financial, and P&C – were members of an unincorporated association of interrelated companies doing business together as State Auto or State Auto Group.[1]    Plaintiff also alleges Mutual and P&C use a registered tradename

---

[1]   The interrelatedness is shown by allegations that:   Mutual owned and controlled 58% of Financial, which wholly owned P&C (making Mutual "the ultimate parent" of P&C); the three corporations had identical officers; and they had common management, operations, and cost-sharing agreements by which they jointly contributed and shared employees, operating facilities, and monies.   *See* Am. Compl. ¶¶ 11-14.

of "State Auto Insurance Companies," that "Defendants collectively marketed insurance products, including the subject insurance policy" as State Auto, that State Auto "was recognized and rated by A.M. Best Company as operating together as an insurance group," and that Mutual was appointed as "the ultimate controlling person of the group" and had the power to direct "the management and policies of . . . State Auto Group, as well as each of its members, which included Financial and P&C." *See* Am. Compl. ¶¶ 8-10, 15-16. Finally, Plaintiff points to the State Auto name and logo on the subject policy and alleges that parts of the policy could be read as identifying State Auto and Mutual as insuring entities. *Id.* ¶¶ 17-20.

The Amended Complaint also retains Plaintiff's original allegations regarding the existence of a reinsurance agreement under which P&C ceded its insurance business to Mutual and assumed back 51% of premiums, losses, and expenses (with Mutual retaining 34.5%), and the existence of a pooling arrangement under which Mutual, Financial, and P&C pooled their insurance business. *See id.* ¶¶ 21-23 (formerly, Pet. ¶¶ 7-9). Plaintiff has expanded its explanation of the pooling arrangement to allege that all "Defendants" shared "underwriting and claims handling responsibilities . . . and risk of loss under the subject insurance coverage . . . doing business insurance together as" State Auto, "had joint interests in the pooled insurance business including the rights, duties, and obligations under the subject insurance policy," "agreed to, and did, share profits and losses under certain insurance business" including the subject policy, and "acted together and conducted the insurance business jointly and cooperatively under the rights, duties, and obligations arising from insurance policies including the subject insurance policy." *Id.* ¶¶ 24-27.

Finally, Plaintiff has amended the basis of its claims to state that State Auto issued the businessowners policy that insured the mortgaged property, that State Auto was notified of the loss and a claim under the policy, and that State Auto was asked to investigate and pay the claim. *Id*. ¶¶ 29-32. Plaintiff claims Defendants collectively breached the insurance contract by failing to promptly investigate and pay the claim, conducted a biased and unreasonable investigation and valuation of damage to the property, and in multiple ways breached their duties of good faith toward Plaintiff. *Id*. ¶¶ 33-36.

In response to the Amended Complaint, Mutual and Financial renew their assertions that Plaintiff's claims against them should be dismissed because they did not issue the insurance policy and could not breach a contract, or a duty of good faith implied from a contract, to which they were not parties. *See* Defs.' Mut. and Fin.'s Mot. Dismiss at 4-7. Mutual and Financial also contend the Amended Complaint "fails to allege facts sufficient to establish that [they] are alter egos of [P&C] under the applicable law." *Id*. at 4, 9. They maintain that the law of Iowa, where P&C was incorporated, governs this issue and imposes a high, unmet burden (*id*. at 10-16), but Plaintiff also fails to satisfy the standard set by Oklahoma law. *Id*. at 16-20. State Auto makes these same arguments and, in addition, argues that Plaintiff's suit against it relies on a statute, Okla. Stat. tit. 12, § 182, that merely allows an unincorporated association to be sued and does not create liability. State Auto asserts that Plaintiff has failed to plead a factual basis for State Auto to incur contractual or tort liability under the insurance policy.

**Discussion**

In its prior Order, the Court accepted some of the same arguments made by Mutual and Financial regarding Plaintiff's original pleading. The Court found that an interrelationship of affiliated companies was insufficient to bind companies that did not issue the policy and that Plaintiff had not pleaded a basis for holding Mutual and Financial vicariously liable. *See* 6/20/23 Order [Doc. No. 26] at 5-6 (citing *Oliver v. Farmers Ins. Grp.*, 1997 OK71, ¶ 11, 941 P.2d 985, 987-88). Acknowledging the allegation of an unincorporated association of companies, the Court found that Plaintiff had not stated sufficient facts to satisfy the required "control" factors under *Frazier v. Bryan Memorial Hospital Authority*, 775 P.2d 281, 288 (1989). *See* 6/20/23 Order at 7 (quoting *Oliver*, 1997 OK 71, ¶ 16, 941 P.2d at 988). The Court further found that Plaintiff had not alleged a factual basis to show that Mutual or Financial "acted sufficiently like an insurer" to create a duty of good faith under *Badillo v. Mid Century Insurance Co.*, 2005 OK 48, ¶ 52, 121 P.3d 1080, 1101. *See* 6/20/23 Order at 6-7.

Plaintiff asserts that the additional allegations in the Amended Complaint cure the deficiencies found by the Court and now state plausible claims. Plaintiff contends its claims against insurers that did not issue the policy are properly based on their relationship with the issuer in an unincorporated association of companies; the association is properly sued under Okla. Stat. tit. 12, § 182; and all may be held liable to the insured under *Oliver*. Plaintiff argues that Oklahoma law applies but its allegations also satisfy Iowa law. Plaintiff also asserts that its claims against non-issuing companies are proper under caselaw such as *Badillo*, which held that liability may be imposed on non-issuers based on their

involvement with the policy, the insured, and the insurance claim such that they were acting sufficiently like an insurer.[2]

Regarding the liability of an unincorporated association of insurance companies and its members to an insured, the Court adheres to its prior reading of *Oliver*. The Oklahoma statute (§ 182) authorizes a suit against an unincorporated association, but the liability of a company that did not issue the insurance policy must be established under traditional principles.   *See Oliver*, 1997 OK 71, ¶ 16, 941 P.2d at 988 ("Any ultimate liability of companies in the Group other than the [issuer of the policy] would be dependent on the plaintiff's ability to show the 'control' factors articulated in *Frazier*, *supra*.").   The Oklahoma Supreme Court expressly pointed to the common law rule:   "If a corporation is simply the instrumentality of another corporation, the separation between the two may be disregarded and treated as one for the purpose of tort law."   *Id*. at ¶ 8, 941 P.2d at 987 (citing *Frazier v. Bryan Mem'l Hosp. Auth.*, 775 P.2d 281, 288 (Okla. 1989)); *see Campbell v. Am. Int'l Grp., Inc.*, 1999 OK CIV APP 37, ¶ 29, 976 P.2d 1102, 1109.   The supreme

---

[2] Plaintiff also seems to argue that State Auto and Mutual could be viewed as issuers of the policy based on language and features of the forms, which use the name of the group, speak about the group, and state conditions for policyholders of Mutual.   *See* Pl.'s Resp. Br. at 3-5. Despite these features, however, the declarations page for the policy states that insurance coverage for the named insureds was provided by P&C and the words "we" and "us" mean the company providing coverage.   *See* Policy [Doc. Nos. 30-1 and 32-1] at 17, 54, 121, 155-56 (ECF page numbering).   Plaintiff cannot rely on allegations or inferences that contravene the plain language of the policy.   *See*, *e.g.*, *Toone v. Wells Fargo Bank*, 716 F.3d 516, 521 (10th Cir. 2013) (in suit regarding promissory note, "we examine the [note] itself, rather than the complaint's description of it"); *Jacobsen v. Deseret Book Co.*, 287 F.3d 936, 942 (10th Cir. 2002) (in copyright infringement case, "the legal effect of the [published] works are determined by the works themselves rather than by allegations in the complaint").

court listed ten factors that may be considered, as well as "commonality of purpose between the corporations."   *Oliver* at ¶ 8, 941 P.2d at 987.[3]

Upon consideration of the well-pleaded factual allegations of the Amended Complaint, the Court finds that they are minimally sufficient to state plausible claims against State Auto, Mutual, and Financial for liability to P&C's insureds, Red Oak and Plaintiff.   Plaintiff correctly notes that many of its factual allegations align with evidence that the supreme court found in *Oliver* was sufficient to create a jury issue regarding the liability of non-issuing insurance companies in that case.   Plaintiff's factual development of its case may or may not yield evidence to support its claims, but at the pleading stage, the Court cannot say that Plaintiff's allegations fail to state a plausible claim.

State Auto, Mutual, and Financial resist this conclusion by primarily asserting that a choice-of-law issue must be decided as a preliminary matter.   They contend there is a conflict between the laws of Oklahoma and Iowa, and applying Iowa law to the issue of whether to pierce P&C's corporate veil is fatal to Plaintiff's case against them because Iowa law would require proof that P&C was used to perpetuate fraud or promote injustice.

---

[3]   These factors are:

(1) the parent corporation owns most or all of the stock; (2) the corporations have common officers or directors; (3) the parent provides financing to the subsidiary; (4) the dominant corporation subscribes to all the other's stock; (5) the subordinate corporation is under capitalized; (6) the parent pays the salaries, expenses or losses of the subsidiary; (7) a great deal of business is with parent corporation or assets of the former were conveyed to the other corporation; (8) the parent refers to the subsidiary as a division or department; (9) the subsidiary follows directions from the parent's officers or directors; [and] (10) legal formalities for keeping the entities separate are observed.

*Id.* (citing *Frazier*, 775 P.2d at 288).

*See* Defs.' Mut. & Fin. Mot. at 10-13; State Auto's Mot. at 14-16.    The Court is not

persuaded by this argument.

"Under Iowa law, an entity's corporate form can be disregarded either by applying

the alter ego doctrine or by piercing the corporate veil."    *HOK Sport, Inc. v. FC Des*

*Moines, L.C.*, 495 F.3d 927, 935 (8th Cir. 2007) (citing *Team Cent., Inc. v. Teamco, Inc.*,

271 N.W.2d 914, 923 (Iowa 1978) (en banc)).    The Eighth Circuit summarized the two

doctrines as follows:

> To further the public convenience, cure wrongs, protect against fraud,
> and advance the ends of justice, the alter ego doctrine disregards an entity's
> corporate form if the entity is merely an instrumentality or device set up to
> ensure the avoidance of the legal obligations.    A corporate entity is the alter
> ego of a person if (1) the person influences and governs the entity; (2) a unity
> of interest and ownership exists such that the corporate entity and the person
> cannot be separated; and (3) giving legal effect to the fictional separation
> between the corporate entity and the person would sanction a fraud or
> promote injustice.

*Id*. (internal quotations, citations, and footnote omitted).[4]    Further, "[u]nder Iowa law,

disregarding an entity's corporate form by piercing the corporate veil is appropriate if the

corporation is a mere shell, serving no legitimate business purpose, and used primarily as

an intermediary to perpetuate fraud or promote injustice."    Like Oklahoma, however,

Iowa law considers multiple factors in deciding whether to pierce the corporate veil:

> The corporate form can be disregarded if (1) the corporation is
> undercapitalized, (2) without separate books, (3) its finances are not kept
> separate from individual finances, individual obligations are paid by the
> corporation, (4) the corporation is used to promote fraud or illegality, (5)

---

[4]    Although the personal liability of a corporate owner, officer, and director was at issue
in *HOK Sport*, the Eighth Circuit noted:    "In addition to applying to persons using a corporate
entity as a mere instrumentality, the alter ego doctrine also applies to a corporate entity using
another corporate entity as a mere instrumentality."    *Id*. at 935 n.4.

corporate formalities are not followed, or (6) the corporation is merely a sham.   A party seeking to pierce the corporate veil need not prove all six factors, but it must prove at least one of the factors.   For example, fraud is a sufficient, but not necessary, condition for piercing the corporate veil.

*Id*. at 935-36 (internal quotations and citations omitted).   Accepting the Eighth Circuit's summary as an accurate statement of Iowa law, the Court is not convinced that there is a conflict between the laws of Oklahoma and Iowa that must be resolved before determining whether Plaintiff has stated a plausible claim.

Finally, Plaintiff also presses an alternative theory that Oklahoma law imposes a duty of good faith and fair dealing on a stranger to the insurance contract who "engages in activities or conduct such that it may be found to be acting sufficiently like an insurer so that a special relationship can be said to exist between the entity and the insured." *Badillo*, 2005 OK 48, ¶ 52, 121 P.3d at 1101.   In *Badillo*, the insurer and an affiliated company "acted as one entity in regard to the insured's policy relating to [a third-party] claim," the affiliated company's "employees handled the claim and adjusted the claim," and the affiliated company "acted as if it was the insurer in its handling of the [third-party] claim."   *Id*. at ¶¶ 53, 55, 121 P.3d at 1101-02.

In contrast, Plaintiff does not allege that State Auto, Mutual, and Financial were involved in handling or adjusting Red Oak's claim.   Plaintiff instead relies on factual allegations regarding risk-sharing and pooling agreements, which allegedly gave members of State Auto a financial stake in all insureds' loss claims.   *See* Pl.'s Resp. Br. at 13-15, 17-18.   Upon consideration of the well-pleaded factual allegations of the Amended Complaint, the Court reaffirms its prior finding that Plaintiff's allegations are insufficient

to establish tort liability of Mutual and Financial, and now State Auto, under the principles discussed in *Badillo* based on activities with respect to Red Oak's claim that might establish a "special relationship" with Red Oak or Plaintiff.

## Conclusion

For these reasons, the Court finds that the Amended Complaint states plausible claims against State Auto, Mutual, and Financial under an alter-ego or piercing-the-corporate-veil theory and that Plaintiff's action against these defendants should not be dismissed.

**IT IS THEREFORE ORDERED** that Defendants' Motions to Dismiss [Doc. Nos. 30 and 32] are **DENIED**.

**IT IS SO ORDERED** this 22nd day of March, 2024.

TIMOTHY D. DeGIUSTI
Chief United States District Judge